**UNITED STATES of America ex rel.
Joseph McCANT**

v.

**Joseph R. BRIERLY, Superintendent
State Correctional Institution at
Philadelphia, Pa.**

**No. 3871.**

United States District Court
E. D. Pennsylvania.

Aug. 4, 1969.

Norman Ashton Klinger, Philadelphia, Pa., for plaintiff.

Arlen Specter, District Atty., City of Philadelphia, Pa., for defendant.

## OPINION AND ORDER

TROUTMAN, District Judge.

This is a petition by a State prisoner for a writ of habeas corpus. Relator entered a plea of guilty to a general charge of murder in the Criminal Courts of Philadelphia County on October 25, 1954. A three-judge court was impanelled which after hearing the testimony bearing upon the degree of guilt fixed the degree of the crime at murder in the first degree and sentenced relator to life imprisonment. No direct appeal was taken from the judgment of conviction and sentence.

On two separate occasions relator collaterally attacked his conviction and sentence by petition in the State courts and in each instance he alleged an involuntary guilty plea and a procedural impropriety by the three-judge court. The petitions were denied without a hearing and in each instance the Pennsylvania Supreme Court affirmed. Commonwealth ex rel. McCant v. Rundle, 418 Pa. 394, 211 A.2d 460 (1965); Commonwealth v. McCant, 424 Pa. 349, 227 A.2d 630 (1967).

In this petition for a writ of habeas corpus relator has advanced the same contentions which the State courts considered and rejected. In addition, it is alleged by relator that his rights to due process were violated when one member of the three-judge court received evidence in the absence of the parties to the case and the other members of the Court.

The Clerk of the Criminal Courts of Philadelphia County was ordered to produce the State Court record and the District Attorney of Philadelphia County was ordered to show cause why a writ of habeas corpus should not be granted. In his answer to the order to show cause, the District Attorney concedes that relator has satisfactorily exhausted his State remedies as to those contentions advanced throughout the State proceedings, Roberts v. LaVallee, 389 U.S. 40, 42–43, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967), but disputes the factual allegations contained in relator's petition, primarily with respect to the voluntary nature of his guilty plea. To resolve these factual questions an evidentiary hearing was conducted in this Court. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), as codified at 28 U.S.C. § 2254.

The principal contention advanced by relator concerns the voluntary nature of his guilty plea. In that connection, relator alleges that his rights to due process were violated in that his guilty plea was induced by his counsel's representation that the District Attorney assured a conviction of no higher than second-degree murder in the event of a guilty plea.

From the State Court record it appears that when relator was first arraigned on the charge of murder he pleaded not guilty and the Commonwealth moved to proceed with the trial. Rather than pick a jury immediately, defense counsel requested a conference in chambers with the presiding judge and the District Attorney. The conference was requested by defense counsel in an attempt to bargain for a guilty plea.

During the course of the conference it became apparent that the District Attorney and defense counsel were having a great deal of difficulty in coming to any sort of an agreement on the degree of guilt. This difficulty stemmed in large part from the facts subsequently developed concerning the relationship existing between the parties involved and the circumstances surrounding the homicide as follows: For approximately four years prior to the time in question, relator had been living with the victim of the homicide, a married woman. The decedent held herself out as the lawful wife of relator during this same period of time. On the morning of the day in question relator entered the apartment where he and the decedent had been living and found her in bed with another man. Whereupon he took a revolver from his person and fired it in the direction of this other man. The bullet passed through him and struck and killed the decedent. On these facts, defense counsel during the course of the conference sought a voluntary manslaughter conviction in return for a guilty plea. However, the District Attorney refused to certify or recommend anything at the conclusion of the conference, but did agree:

"* * * that after hearing the evidence if he [defense counsel] could establish that they [relator, and victim] had been living together, and so forth, as far as the sentence would go, I

would not object to certifying second degree murder as to sentence."[1] State Court Record, p. 76.

A period of twenty minutes elapsed from the time court was recessed for the conference until court was reconvened. At that time, relator changed his plea to guilty to murder generally and the three-judge court was impanelled to fix the degree of guilt. At the conclusion of all the testimony, the District Attorney refused to certify or recommend that the degree of guilt rose no higher than second degree since the testimony indicated that relator and the decedent were not "living together" at the time of the homicide. Defense counsel vigorously objected to the refusal by the District Attorney to certify as agreed and argued to the Court that the testimony elicited from the various witnesses conclusively established that relator and the decedent had been "living together and so forth" as contemplated by the agreement. Indeed, defense counsel was so convinced that the record conclusively established "living together and so forth" that he represented to the Court at the conclusion of the testimony that:

"[i]t was our understanding that the District Attorney, if asked by your Honors, would say he would recommend nothing higher than second degree * * *". State Court Record, p. 73.

No mention was made of the conditions upon which the agreement to certify was based because defense counsel was apparently convinced that those conditions had been satisfied. The Court, in agreeing with the District Attorney's refusal to certify, took the position that the defense had not established that relator and decedent had been "living together and so forth" because the testimony indicated that their living together was meretricious and was interrupted on sev-

---

1. There was some confusion as to what was intended by the District Attorney's agreement to certify second degree murder only as to sentence. This led defense counsel to comment in response to a question by the Court as to what was intended by the District Attorney that: "I don't know what he meant". State Court Record, p. 93.

eral occasions for a variety of reasons. Defense counsel then sought to withdraw the guilty plea "because I [defense counsel] do not think a plea should have been entered as we now know the facts", but this request was refused by the Court. State Court Record, pp. 111 and 112.

The notes of testimony of the hearing conducted in this Court indicate as follows: At the time of the entry of his plea relator was thirty-one years of age[2] and had a third grade education. He was aware of the different degrees of murder and the permissible range of sentences. He testified that trial counsel advised him to plead guilty to murder generally based upon a conversation had between counsel and the District Attorney during the recess to which we previously alluded. The substance of this conversation as represented by counsel was that the District Attorney had assured counsel that a guilty plea would result in no higher than a second-degree murder conviction which carries with it a maximum sentence of from ten to twenty years. He further testified on direct examination that he was not aware of what it meant to plead to murder generally or for the District Attorney to certify to a particular degree. However, on cross-examination, he appeared to contradict himself somewhat when he testified that he knew that the Judge did not have "to go along with the District Attorney", although he also testified that he understood "that the Judge would go along with him [District Attorney]". Notes of testimony, pp. 44 and 45.

Relator's trial counsel is deceased, but co-counsel testified that there were no representations to relator that there were any assurances as to the degree of guilt and that he believed that trial counsel explained to relator that unless provocation was established to the satis-faction of the District Attorney there was no agreement to certify. The District Attorney then testified that by the agreement reflected in the notes of testimony in the State Court record it was intended that only if the defense could establish to his and the Court's satisfaction that the degree of guilt rose to no higher than second degree would he so certify. The District Attorney further testified that in his experience a certification by the District Attorney as to the degree of guilt, while not binding on the Court, carried a great deal of weight.

■ It is, of course, well settled that an accused's plea of guilty, the equivalent of a conviction after trial, satisfies the due process clause of the Fourteenth Amendment only if made intelligently and voluntarily. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). The plea must reflect the considered choice of the accused, free of any factor or inducement which has unfairly influenced or overcome his will. A guilty plea that is induced by coercion, promises, or is otherwise unfairly obtained or given through ignorance, fear or inadvertence, is involuntary and inconsistent with due process of law.

■■ Preliminary to a consideration of relator's contention concerning his guilty plea, it must be noted that the trial court did not interrogate him fully as to his understanding of the plea and of the consequences which flowed from the entry of the plea. In the absence of which, the burden of demonstrating the validity of the plea rests upon the Commonwealth. United States ex rel. Fink v. Rundle, 414 F.2d 542 (3rd Cir. 1969); United States ex rel. Crosby v. Brierley, 404 F.2d 790 (3rd Cir. 1968); United States ex rel. McCloud v. Rundle, 402 F.2d 853 (3rd Cir. 1968). In sustaining

---

2. On the statement given to the police by relator at the time he was arrested, which is part of the State Court record, it is indicated that relator was thirty-three years of age approximately six months prior to the entry of his plea. We do not believe that the two year disparity is at all significant and we make note of it merely for the sake of accuracy.

its burden the Commonwealth must show that the "totality of circumstances" present at the time when relator entered his plea were such as would indicate that he intelligently and voluntarily pleaded guilty. Among the circumstances to be considered are the following: The relator's age and background; the consistency, or lack of consistency, in the pleas made by relator throughout the pre-trial and trial stages of the case; the extent, if any, to which the trial court conducted an inquiry into relator's understanding of the plea; trial counsel's familiarity with the law; and, relator's opportunity to consult with trial counsel. See *Crosby, supra,* 404 F.2d at 802.

A critical question here is the impact, if any, of defense counsel's representations concerning the agreement upon relator. The fact that the representations may not have been deliberately designed or intended to influence or to induce relator to plead guilty is not material—the question is did they have that impact. The issue need not be resolved on the basis of relator's own testimony, but finds other support in the record. When relator was first arraigned he entered a plea of not guilty. Twenty minutes later, during part of which time defense counsel and the District Attorney conferred with the Judge in chambers, relator decided to surrender his right to trial and pleaded guilty to murder generally. It is apparent from the State Court record that during this period of time an agreement had in fact been reached between defense counsel and the District Attorney. Certain representations were made to relator by counsel concerning the substance of the agreement and relator then entered a plea of guilty. Under these circumstances, we cannot help but conclude that the representations of defense counsel concerning the agreement induced the plea.

 The occurrence of plea bargaining is a recognized fact in the administration of criminal justice. Where it actually takes place, that fact alone does not automatically vitiate the voluntary character of the plea and relator does not so contend. It is essential, however, that the defendant be fully aware and understand the actual value of any commitments made to him by the Court, prosecutor, or his own counsel. United States ex rel. Fink v. Rundle, *supra.* If the defendant does not fully understand the plea agreement, a guilty plea entered on the basis of such an agreement may be invalid in certain circumstances regardless of whether the defendant misunderstood the representations of his counsel or whether counsel misrepresented the terms of the agreement. Bailey v. MacDougall, 392 F.2d 155 (4th Cir. 1968), cert. den. 393 U.S. 847, 89 S.Ct. 133, 21 L.Ed.2d 118 (1968); United States v. Shneer, 194 F.2d 598 (3rd Cir. 1952); United States ex rel. Thurmond v. Mancusi, 275 F. Supp. 508 (E.D.N.Y. 1967); United States ex rel. Elksnis v. Gilligan, 256 F. Supp. 244 (S.D.N.Y. 1966); see also 8 Moore's Federal Practice, § 11.05 [4].

No matter how the facts surrounding the entry of relator's guilty plea are viewed, it is evident from the State Court record itself that at the very least there was misunderstanding and confusion as to the nature of the agreement which is apparently conceded to actually have been reached between defense counsel and the District Attorney. The District Attorney assumed that the defense had to establish "living together and so forth" at the time of the homicide. The Court assumed that the defense had to establish that the "living together and so forth" was lawful in nature and was continuous and uninterrupted. Defense counsel was not proceeding on the basis of any such assumptions and naturally, therefore, could not possibly have conveyed them to relator. Indeed, the District Attorney representing the Commonwealth at the evidentiary hearing conducted in this Court stated to the

Court that "[t]he words 'living together' in this case might mean many things to many people". Notes of testimony, p. 77. In these circumstances, alone, fundamental fairness would appear to require relator to have been restored to his original position and to have been permitted to withdraw his guilty plea. United States ex rel. Elksnis v. Gilligan, *supra.*

But relator goes well beyond this and contends that it was represented to him by counsel that the District Attorney assured a conviction of no higher than second-degree murder in return for a guilty plea. It is true that the State Court record which reflects the actual agreement contains no such assurance. However, the reaction of defense counsel to the District Attorney's refusal to certify makes it abundantly clear that at the time he conferred with relator his evaluation of the agreement left no doubt in his mind that the facts as he knew them would establish "living together and so forth" as contemplated by the agreement and that the District Attorney would then certify as agreed. Since the substance of the agreement was represented to relator in this framework, then it may well have been that the representation took the form of an assurance by defense counsel or that relator so understood it. This is especially true in the light of defense counsel's knowledge and belief at the time that a certification by the District Attorney would carry a great deal of weight with the Court. We do not mean to suggest that this in and of itself is determinative of anything. We merely point it out as an additional circumstance which we believe is properly to be considered in passing upon the merits of relator's contention.

■ At the time of the entry of his guilty plea relator was very poorly educated and he, therefore, depended entirely upon the judgment and advice of his counsel. A period of only twenty minutes elapsed from the time relator entered a plea of not guilty to the time he changed his plea. During part of this time defense counsel conferred with the District Attorney and the presiding judge in chambers. This afforded little time for defense counsel to explain to relator the substance of the agreement and to afford relator a reasonable opportunity to intelligently reflect upon the full impact of it. No attempt was made by the Court before accepting the plea. to ascertain whether a plea agreement had been made or whether relator fully understood it. There is a great deal of confusion as is evidenced by the State Court record as to precisely what was intended by what is conceded to be the actual agreement, even aside from relator's allegations concerning defense counsel's representations concerning it. When all of this is taken together with defense counsel's evaluation of the agreement and consequent state of mind at the time he advised relator concerning the agreement, we are unable to conclude that the Commonwealth has sustained its burden of establishing that relator fully understood the precise nature and consequences of the plea agreement or had ample opportunity to adequately reflect upon it so as to intelligently and voluntarily enter his plea of guilty.

While it is true that relator testified on cross-examination that he knew the District Attorney could not bind the Court, he also testified that he understood that the Court would accept the District Attorney's certification. In view of relator's background and the short period of time he had to confer with counsel, together with the other factors involved in this case, we cannot permit the Commonwealth to seize upon this to sustain its burden.

It is argued by the Commonwealth that the testimony of co-counsel and the District Attorney in this Court clearly indicates that relator was well aware of the terms of the agreement and entered his plea voluntarily. Co-counsel testified that his recollection of what transpired immediately prior to the entry of relator's guilty plea was vague at best,

that he "believed" the agreement was fully explained to relator by defense counsel, and that as he understood the agreement provocation had to be first established by the defense before the District Attorney would make any certification. It is clear, however, from the State Court record that the agreement to certify was not contingent upon provocation but what was intended to be a completely objective standard of "living together and so forth". The District Attorney testified that he had no recollection of the case whatsoever and that by the agreement reflected by the State Court record it was intended that only if the defense could establish to his and the Court's satisfaction that a second-degree murder conviction was indicated would he so certify. But the agreement itself as stated in the State Court record requires no such thing. We do not mean to be unduly critical of either the District Attorney or co-counsel for we can appreciate their difficulty in attempting to recollect the particulars of something which transpired many years ago. However, we are not persuaded by their testimony that the Commonwealth has sustained its burden. We will, therefore, grant the writ.

In a recent decision of the United States Supreme Court it was held that it is fundamental error for a State Court judge to accept a guilty plea without an on-the-record inquiry demonstrating that the plea is entered knowingly and voluntarily. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In the light of our disposition of relator's petition, we do not find it necessary to decide whether *Boykin* is to be given retrospective application.

As to relator's allegation concerning the receipt of testimony by one member of the three-judge court in the absence of the parties to the case and the other members of the Court, we find that relator has not exhausted his State remedies and we, therefore, see no necessity for passing upon its merits. As to the re-maining allegation concerning the procedural impropriety by the three-judge court, we find it to be without merit.

### ORDER

And now, this 4th day of August, 1969, it is ordered that relator's petition for a writ of habeas corpus is granted; it is further ordered that execution of the writ will be stayed for a period of forty-five (45) days from the date of this order within which time the Commonwealth of Pennsylvania may either file an appeal from this order or proceed with the rearraignment of relator, failing in which the writ shall issue as of course.