STATE *ex rel.* ROBERT CLANCY

*v.*

IRA M. COINER, *Warden, West Virginia Penitentiary*

(No. 12916)

*and*

STATE *ex rel.* LOWELL DAVID STERN

*v.*

IRA M. COINER, *Warden, West Virginia Penitentiary*

(No. 12915)

Submitted January 13, 1971.        Decided March 16, 1971.

*Preiser, Greene, Hunt & Wilson, Stanley E. Preiser, Leo Catsonis,* for relators.

*Michael Tomasky,* for Robert Clancy.

*Chauncey H. Browning, Jr.,* Attorney General, *Willard A. Sullivan,* Assistant Attorney General, for respondent.

CAPLAN, PRESIDENT:

Invoking the original jurisdiction of this Court, the petitioners, Robert Clancy and Lowell David Stern, filed herein separate petitions in habeas corpus, whereby they seek to have this Court declare void, in the circumstances hereinafter described, guilty pleas which each of them entered in the Circuit Court of Monongalia County. Inasmuch as these cases involve an identical issue they were consolidated for argument and will be considered together in this opinion.

Each of the petitioners was indicted by the grand jury of the Circuit Court of Monongalia County for the crime of possession and sale of "a narcotic drug known as Cannabis, and more commonly known as Marijuana." Each of the petitioners, on October 13, 1969, entered a plea of not guilty to the charges set out in his respective indictment. Subsequently, the petitioners, in separate proceedings and in circumstances of which they here complain, changed their pleas from not guilty to guilty and were sentenced to confinement in the penitentiary for a term of from two to five years.

Petitioner Clancy alleges that on November 3 and 4, 1969, he and his parents were present in the courtroom of the Circuit Court of Monongalia County throughout the trial of one Robert Harr who had also been indicted for the possession and sale of marijuana. When the jury returned a verdict of guilty, the petitioner and his parents, being upset by said

verdict, met with counsel to determine the course to take in the petitioner's behalf. After a short discussion, counsel left the conference room but returned in approximately fifteen or twenty minutes. They then informed the petitioner and his parents that they had conferred with Joseph A. Laurita, Jr., the prosecuting attorney, and they appeared to be pleased with the results of that conference.

Counsel for the petitioner related that the prosecuting attorney agreed, if this petitioner would enter a guilty plea to the charge of possession of marijuana, to dismiss the count charging him with the sale thereof. According to counsel, the prosecuting attorney also promised that he would recommend to the judge and to the probation officer that petitioner Clancy be granted probation; also that he would not resist probation. Counsel, having observed the rapport between the trial judge and the prosecuting attorney during the former trial, fully believed that their client, by pleading guilty to the charge of possession of marijuana, would escape confinement in the penitentiary by being placed on probation.

Consequently, on November 5, 1969, petitioner Clancy appeared in court and changed his plea, entering a plea of guilty to the charge of possession of marijuana. The charge of sale contained in the second count of the indictment was dismissed. Motion that petitioner be placed on probation was made and the court referred the matter to the probation officer for investigation. This motion was not resisted by the prosecuting attorney.

On December 10, 1969, the date set for sentencing, petitioner Clancy again appeared before the court at which time he was sentenced to imprisonment in the penitentiary for a term of two to five years and was fined $500.00. The petitioner then moved for a stay of execution of the sentence for one week to enable him to take a final examination in a course he was taking as a student at West Virginia University. The stay of execution was denied. Petitioner Clancy, with his counsel, again appeared before the trial court on December 17, 1969 and asked the court to reconsider its refusal of probation. This request, as alleged by this petitioner, was

vigorously resisted by the prosecuting attorney. The court denied the request and the petitioner was shortly thereafter transported to the state penitentiary.

On December 22, 1969, this Court granted the petitioner a writ of habeas corpus and ordered him to be released on bail pending the final disposition of that proceeding. The writ was returnable January 27, 1970. However, it was determined that evidence would have to be taken and this matter was ultimately continued until January 13, 1971, on which date it was argued and submitted for decision.

It is the position of petitioner Clancy that the prosecuting attorney misled him and his counsel in that he failed to recommend to the judge that he be placed on probation as he had promised and assured plaintiff's counsel he would do; that his act of changing his plea from not guilty to guilty of possession of marijuana was based solely on these promises and would not have been entered had such promises not been made; that by reason thereof the guilty plea constituted an involuntary plea and is null and void as a violation of petitioner's constitutional rights.

The respondent, of course, asserts that the plea of guilty was voluntary and is valid. He takes the position that the transcript in the trial court affirmatively shows that the petitioner's plea of guilty was, in fact, voluntary. He points out that in reply to the court's interrogation he stated that his plea was being entered voluntarily and not as a result of any threat, promise or inducement made to him by any state or county official. Basically, the respondent says, the petitioner has not borne the burden of proof which he must do to show that his plea was involuntary.

In view of these assertions by each of the parties it is necessary to consider the evidence before this Court. Offered in support of this petitioner's allegations are the joint affidavit of Clancy and his parents, the joint affidavit of his counsel, Stanley E. Preiser and Leo Catsonis, and the deposition of the Honorable Marvin R. Kiger, Judge of the Circuit Court of Monongalia County. The deposition of Mike Magro, Jr.

was also made a part of the record. The respondent relies on the transcript of the proceedings before the trial court and the affidavits of Joseph A. Laurita, Jr., the prosecuting attorney, and Mike Magro, Jr. all of which are included in the record as exhibits.

The joint affidavit made by petitioner Clancy and his parents, Theodore F. Clancy and Viola E. Clancy, fully supports the allegation that the change of plea by Clancy from not guilty to guilty was induced solely by their belief that the prosecuting attorney would recommend to the judge and probation officer that said petitioner be placed on probation. They do not aver therein that the prosecuting attorney made any promise to them but relate that the promise was conveyed to them through counsel after they, counsel, had conferred with the prosecuting attorney, said promise being that the latter would recommend probation. They state in their affidavit that "Counsel did advise affiants that there could be no absolute guarantee [of probation] but that based upon their conference with Mr. Laurita and the promises made to them by Mr. Laurita that they were of the opinion that this would be best for Robert." They further deposed that "Based upon our personal observations of the conduct of the Harr trial and the obvious relationship between the Judge and Mr. Laurita and upon our conversation with our attorneys concerning their discussion with Mr. Laurita, affiants agreed that Robert should change his plea from not guilty to guilty to possession of marijuana." Finally, they said "Based upon our understanding with counsel, on the following morning, November 5, 1969, affiants returned to court and Robert changed his plea from not guilty to guilty of possession of marijuana."

In their joint affidavit Mr. Preiser and Mr. Catsonis aver that they met with the prosecuting attorney of Monongalia County who advised them that he was "rather exhausted as a result of the Harr trial" and that to obviate the necessity of another trial he would agree, if Clancy would enter a plea of guilty to the possession count of the indictment, to dismiss the count charging sale of marijuana. Furthermore, say counsel, Mr. Laurita promised that he would personally recommend to the judge of the Circuit Court and to the probation officer

that Robert J. Clancy be granted probation; and that he would not resist probation.

The joint affidavit of counsel includes the following assertions:

> "Affiants then transmitted this agreement to the petitioner and his parents and based thereon counsel recommended to petitioner and his parents that petitioner change his plea from not guilty to guilty of possession of marijuana. Affiants explained to petitioner and his parents that in view of the obvious rapport existing between the prosecuting attorney and the judge in rulings and otherwise during the course of the trial of Robert Harr, a companion case, which petitioner and his parents had observed, and based upon the prosecutor's statement that the Judge had always followed his recommendations, affiants were relatively positive that probation would be granted and conveyed this opinion to petitioner and his parents, cautioning that affiants could not, however, 'guarantee' probation.

> "Affiants further aver that they had participated in the case of State versus Harr previously referred to in this same Court and had observed from their own knowledge that prior to the trial in the Harr case the Judge had followed the recommendation and position of the prosecutor in every instance, and during the trial of the Harr case followed the position and recommendation of the prosecutor in every instance other than a few minor evidentiary rulings, and as a result of that observance and the prosecutor's statement to affiants to the effect that the Judge had always followed his recommendations, affiants then advised petitioner and parents that they were of the opinion that petitioner should plead guilty to the charge of possession of marijuana as a result of the promises made to them by Joseph A. Laurita, Jr., which promises were not kept and that petitioner and his parents made their decision to plead guilty in reliance upon said promises and the opinion and advice of affiants."

The deposition of the Honorable Marvin R. Kiger was taken and has been made a part of the record. Relative to the issue in this case, the following question was asked and answer

given: "Q. Your Honor, what, if anything, was communicated to you directly by Mr. Laurita, the Prosecuting Attorney of this county, or any assistant Prosecuting Attorney of this county, with regard to their recommendations for or against probation for Robert Clancy, on the charge to which he pleaded guilty? A. The only thing there was between myself, as Judge of the Court, or otherwise, with the Prosecuting Attorney, or anyone related to his office, was that which appears on the record as taking place in open Court. There never was a conversation otherwise." On cross-examination by Mr. Laurita the following question and answer appear: "Q. Judge Kiger, did you ever discuss the Stern or Clancy cases with Joseph A. Laurita, Jr., Prosecuting Attorney of Monongalia County, personally, or with any of his assistants? A. Never anything, except what transpired in open Court, and is a matter of record, relating to the disposition of the cases."

The respondent, in support of his assertion that the plea was voluntary, relies on the transcript of the proceedings before the court and upon the affidavit of Joseph A. Laurita, Jr. In relation to the transcript, the respondent points out that the judge fully advised this petitioner of the consequences of a guilty plea; that he could plead not guilty and stand trial by jury at which time the state would have to prove beyond a reasonable doubt his guilt of the charges in the indictment; that he is charged with possession of a narcotic drug, commonly known as marijuana, the charge of sale thereof having been dismissed; and that the defendant Clancy entered the guilty plea freely and voluntarily.

Further, the respondent says the record shows that the judge asked if there had been any "threats, promises or inducements made to you to get you to plead guilty to the first count of this indictment by any state or county official, including any member of the Prosecuting Attorney's office?" To this question the defendant replied, "No, sir." This is an affirmative showing, says the respondent, that defendant Clancy intelligently and voluntarily entered this plea of guilty.

Heavy reliance is placed by the respondent on the affidavit filed by the prosecuting attorney. Therein he stated that he

related to Clancy's counsel that he would not resist a motion for investigation of probation and that he did not resist such motion. He then says "he did not promise Robert Clancy or his attorneys or any other person that he would get probation; that is exclusively the province of the Judge of the Circuit Court."

Evaluation of the evidence presented in support of this petitioner's contention and of that offered by the respondent in opposition thereto causes us to believe that the petitioner's contention is correct and that the trial court should have permitted the withdrawal of the guilty plea. The affidavits filed on behalf of the petitioner and the deposition of the trial judge clearly support the position taken by petitioner Clancy. Mr. Laurita's affidavit does not dispute such contention. In fact, it is not responsive to the issue. He deposes therein that he did not promise Clancy that he would get probation. He does not deny, however, that he did promise to recommend to the judge that Clancy be placed on probation.

The affidavit of Mike Magro, Jr., a former assistant prosecuting attorney, stating that at no time did Mr. Laurita promise to recommend probation for Robert Clancy, is of little or no probative value in view of a deposition later taken and made a part of this record. In the deposition Mr. Magro explained that by the words "at no time" did Mr. Laurita make the alleged promises, he meant "at no time in my presence" were such promises made. Furthermore, it is shown by the deposition that Mr. Magro's affidavit referred to a meeting in his office which is separate and apart from that of Mr. Laurita. The promises alleged by the petitioner to have been made were made in Mr. Laurita's office in a conference between him and counsel for Clancy.

Of further significance is the fact that the count in the indictment charging sale of marijuana was dismissed and petitioner Clancy was permitted to plead guilty to the single charge of possession. This indicates, inferentially at least, that there was some reason for the dismissal of one count in this case. While this fact alone is not controlling, it is highly persuasive in favor of the petitioner's contention that he was induced by

certain promises to enter a guilty plea to possession of marijuana. Certainly the "sale" count was not dismissed in the prosecution of Robert Harr who was tried and convicted of the charge of possession and sale of marijuana.

In view of all the evidence, we are of the opinion, for reasons hereinafter stated, that petitioner Clancy, by reason of certain promises he believed were made, was under the misapprehension that he would receive probation and that by reason thereof he was induced to change his plea from not guilty to guilty of possession of marijuana. In this circumstance the plea was involuntary and the court should have granted the motion for withdrawal of the guilty plea.

In circumstances similar to the Clancy case, petitioner, Lowell David Stern, changed his plea from not guilty to guilty and was sentenced to imprisonment in the penitentiary. He, too, contends that his plea was involuntary, it having been induced by promises he believed were made, and therefore void.

It is alleged by petitioner Stern that the day before he was scheduled to stand trial, he and his parents met with his counsel and were advised that an agreement had been reached between said counsel and the prosecuting attorney whereby the petitioner was assured of probation in exchange for his entry of a guilty plea and his assistance in the prosecution of other pending cases; that, although he believed he was not guilty of the charges, by reason of his belief that his counsel had received an assurance of probation, he subsequently changed his plea to guilty; and that as a result of said plea he was sentenced to a term in the penitentiary of from two to five years and fined $500.00.

Upon consideration of all of the evidence in the record pertaining to petitioner Stern we are of the opinion that sufficient doubt exists as to the voluntariness of his plea to require the granting of the petition to withdraw such plea. The joint affidavit of his parents, Leopold Stern, Jr. and Lillian Helen Stern, reveals that they believed that their son was innocent of the charges and continued to advise him to plead not guilty

until, according to their belief, one of petitioner's counsel, John P. Ball, advised them that he had worked out an agreement with the prosecuting attorney whereby the petitioner would receive probation if he changed his plea to guilty and would assist the state in other pending cases. Mr. Ball, according to these affidavits, said that probation was a "sure thing", explaining that the prosecuting attorney and the judge both felt that Lowell Stern would be better off "outside". Relying upon what these affiants believed to be a firm promise, they further averred "That affiants and Ball then convinced Lowell that he should change his plea to guilty and assist the prosecutor in the other cases in return for probation and Lowell agreed to do so. This was done by affiants in reliance upon Ball's assurances of what the prosecutor has agreed to and that probation was, in fact, a 'sure thing'."

In an affidavit, Edgar F. Heiskell, III, an attorney at law of Morgantown, stated that he, in the company of Robert W. Dinsmore, of counsel for the petitioner, conferred with petitioner Stern in his jail cell. At that time, in reply to a question by Mr. Dinsmore, petitioner Stern replied that Mr. Dinsmore had never guaranteed probation but that Mr. Ball had given him the impression that probation was a "sure thing."

In further support of petitioner Stern's contention, the record reveals that subsequent to his entry of a guilty plea, Lowell Stern, while at his home in New York, received a telephone call from his counsel, John Ball, advising him to return immediately to Morgantown inasmuch as the prosecuting attorney wanted him to testify against Harry Elliott who was scheduled for trial. However, Mr. Ball called the petitioner again and told him that Elliott was going to plead guilty and that his presence would not be required at that time in Monongalia County. It seems incongruous that Stern would voluntarily return to Morgantown from New York to assist the prosecuting attorney in the prosecution of another defendant in a similar case unless he had agreed to do so in exchange for some benefit to him.

Although counsel for petitioner Stern stated by affidavit that the decision to plead guilty was Lowell Stern's decision

and did not say therein that he had made any agreement with the prosecuting attorney, his overall action in this matter indicates that he did convey at least a strong impression to the petitioner that an agreement had been made whereby he would be placed on probation. The transcript of the proceedings of December 10, 1969, when Mr. Stern was sentenced, affirmatively shows that his attorney, Mr. Ball, was shocked at the denial of probation and the sentence. He inquired of the judge if he had read the presentence report and if he was sure he was considering the right case. He then said "It was my understanding that the Prosecuting Attorney, Mr. Rogers, the State Police, and all of the persons involved, had recommended probation for Mr. Stern and I just want to make sure that there is no mix-up here."

The respondent offered several exhibits including an affidavit by the prosecuting attorney in which he said that he did not promise probation; the affidavit of John P. Ball, wherein he says that the prosecutor agreed not to object to investigation for probation or probation; the affidavit of counsel Dinsmore and the affidavit of Edgar F. Heiskell, III, reference to which has been made above. In addition, the transscript of the proceedings in the court was offered. In the proceedings of October 27, 1969, when the court permitted the petitioner to change his plea from not guilty to guilty, the transcript reveals that the judge fully interrogated the petitioner and specifically asked if his plea of guilty was freely and voluntarily given, to which the petitioner answered in the affirmative. The respondent relies principally on this record as a showing that the defendant's plea of guilty was voluntary and valid.

While the evidence in this case may not be as forceful as that in the Clancy case, we are of the opinion, as noted above, that a serious question exists as to the voluntariness of petitioner Stern's guilty plea. We believe that the "totality of circumstances" test applied by some courts shows that this plea was in fact involuntary, at least when considered subjectively. In *United States ex rel. Thurmond v. Mancusi*, 275 F. Supp. 508, the court considering this issue said "A guilty plea induced by a mistaken belief that a binding plea

agreement had been made is invalid even if it is the defendant's own attorney who is responsible for the defendant's mistaken belief." The court in *United States ex rel. Elksnis v. Gilligan*, 256 F. Supp. 244, used this cogent language: "[E]ven where no specific promise was made, and a guilty plea was entered as a result of a 'grave misunderstanding' solely on the part of defense counsel and not participated in by either the prosecution or the judge, the interests of justice required that the defendants be relieved of their pleas and the judgments of conviction vacated." See 8 MOORE'S FED. PRACTICE, Section 11.05 [4] (1967 Supp.). Of further pertinence to this issue, the court in *Mancusi, supra,* said "A clearcut statement by defense counsel that the District Attorney has made a promise, or an ambiguous remark to which the defendant gives the same meaning, has much the same psychological effect on the defendant as a promise by the District Attorney. The effect may be greater since the defendant is likely to place more trust in his own attorney than in a member of the prosecutor's staff." See also *United States ex rel. McCant v. Brierly*, 304 F. Supp. 651.

In the instant cases the transcript of each of the proceedings reveals that these petitioners, in reply to routine interrogation by the court, answered that their pleas of guilty were freely and voluntarily entered. This, asserts the respondent, conclusively shows that the pleas were voluntary. Does this routine interrogation and response received from the petitioners foreclose further inquiry as to the voluntariness of the pleas? The circumstances under which these pleas were entered, as described above in this opinion, require that this question be answered in the negative.

It has been held in many jurisdictions, and we agree, that the fact that a defendant, in open court, at the time of the entry of a plea, stated that it was not coerced or unduly influenced by promises, although evidential on the issue, does not foreclose inquiry as to its voluntariness. *United States v. Tateo*, 214 F. Supp. 560; *Machibroda v. United States*, 368 U.S. 487, 82 S. Ct. 510, 7 L. Ed. 2d 473; *United States v. Lester*, 247 F.2d 496; *United States v. Shillitani*, 16 F.R.D. 336. While the defendant must bear the burden of proving

that his plea was involuntary, and, although it is generally recognized that it is within the sound discretion of the court to grant or refuse a motion to withdraw a plea, when such burden is properly borne and the court refuses to grant the motion, the ruling will be reversed as an abuse of discretion. See *United States ex rel. Thurmond v. Mancusi,* 275 F. Supp. 508; *Ritter v. State of Oklahoma,* Okla. Cr., 475 P.2d 407. This Court in *State v. Stevenson,* 67 W.Va. 553, 68 S.E. 286 and *In Re: Eplin,* 132 W.Va. 610, 53 S.E.2d 614, clearly held that a court, in a criminal case, has the discretion on proper application and showing to permit an accused to withdraw a plea of guilty and to plead not guilty and a refusal to permit such withdrawal of a plea of guilty is an abuse of discretionary power when it appears that the guilty plea was entered under some mistake, misapprehension or inducement which worked an injustice.

We have found in these cases that the guilty pleas were entered under misapprehension or inducement. This was the result of what each petitioner believed was an agreement entered into between his counsel and the prosecuting attorney, or, in petitioner Stern's case, what he believed was a firm representation by one of his counsel. Generally, the agreement referred to here is one entered into between a prosecuting attorney and a defendant or his counsel whereby each relinquishes some right for what he believes is beneficial to the state and to the defendant. In these cases, for example, in exchange for the entry of guilty pleas, the petitioners believed that the prosecuting attorney agreed to recommend probation under circumstances which led them to believe they would escape imprisonment.

The legal status of these agreements, sometimes referred to as "plea bargaining", has often been questioned. As in *People v. West,* 91 Cal. Rptr. 385, 477 P.2d 409, we undertake here to confirm the legality of the plea bargain and to remove therefrom the shroud of secrecy, subjecting it to "the strong light of full disclosure." In this day of crowded criminal court dockets the speedy dispatch of litigation is essential if justice is to be done. The propriety of such agreements, if fairly and openly entered into by the prosecutor and the defendant, can frankly and realistically be evaluated.

Recognizing the principle that a guilty plea improperly induced is involuntary and void, the current practice in many courts is to go through the formality of asking if there were any promises or threats made to induce the plea. Playing out his role in this drama, the defendant, knowing full well that the prosecuting attorney had made a promise, responds with child-like innocence that nothing was said or done to induce his plea. The plea was entered, of course, in reliance upon the expectation of leniency.

Actually, there is nothing illegal or improper about an honestly consummated bargained plea. This is recognized in *Brady v. United States*, 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747. A plea of guilty is not rendered involuntary merely because it is the product of plea bargaining between the defendant and the state. *People v. West, supra.* Such plea will be rendered void however if it is induced by misrepresentation, including an unfulfilled promise. See *Shelton v. United States*, 246 F.2d 571, which was cited with approval in *Brady v. United States, supra.*

As noted in *People v. West, supra,* "The greatest danger of the current practice lies in its secretiveness." See *United States v. Williams*, 407 F.2d 940, wherein the court, speaking of plea bargaining, said "The matter is, after all, public business, and we deplore the hypocrisy of silent pretense that it has not occurred." We join with the authorities who express the view that plea bargaining should be incorporated in the record of the case. See also *Bailey v. MacDougall*, 392 F.2d 155 and *Smith v. United States*, 277 F. Supp. 850. In this manner court proceedings can be expedited, the voluntariness of the defendant's plea can readily be determined and the orderly administration of justice will be greatly enhanced.

When it becomes apparent that the entry of a guilty plea, for any reason, was involuntary or if the record of the case casts serious doubt as to the voluntariness of the plea, the trial court, upon proper motion of the defendant, should permit the withdrawal of the guilty plea, allow the entry of a plea of not guilty and afford the defendant a jury trial on the merits. When such positive showing is made, the court's refusal to

permit the withdrawal of a guilty plea is an abuse of its discretion and constitutes reversible error. Certainly the state is not so jealous of its awesome power to imprison that it will exercise that power at the expense of justice. The law strongly favors a trial on the merits of a case. If the state's accusation is meritorious, what harm can result from affording a jury trial where there is good reason to believe that the defendant's guilty plea was wrongfully induced?

In *People v. Baron*, —— Ill. ——, 264 N.E.2d 423, the Court, quoting from *People v. Riebe,* 40 Ill. 2d 565, 241 N.E.2d 313, noted this cogent language:

> "The discretion of the trial court to permit the withdrawal of the plea of guilty is a judicial discretion which should always be exercised in favor of innocence and liberty. The law favors a trial upon the merits by jury, and all courts should so administer the law and construe the rules of practice as to secure a hearing upon the merits, if possible. The least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient cause to permit a change of the plea from guilty to not guilty. The withdrawal of the plea of guilty should not be denied in any case where it is evident that the ends of justice will be served by permitting the plea of not guilty in its stead."

Applying the foregoing principles to the two cases consolidated herein, and particularly that expressed in *Baron, supra,* we are of the opinion and we hold that the trial court, in the circumstances revealed by the record, erred in refusing to permit the petitioners to withdraw their guilty pleas and, as requested, to stand trial on their pleas of not guilty. Therefore, the writs are awarded and the guilty pleas entered by the petitioners are declared to be void and of no force or effect, as are the convictions obtained and sentences imposed pursuant to such pleas. This decision, however, does not prejudice the right of the state to proceed with the prosecution of these cases upon a proper arraignment and plea of each of the petitioners.

*Writs awarded.*