THOMAS DAVID CALL

*v.*

ARTHUR L. MCKENZIE

*Acting Warden*

*West Virginia Penitentiary*

(No. 13646)

Decided December 16, 1975.

*Campbell, Love, Woodroe, Gilbert & Kizer, Thomas J. McQuain, Jr.*, for petitioner.

*Chauncey H. Browning*, Attorney General, *E. Leslie Hoffman, III*, Assistant Attorney General, for respondent.

NEELY, JUSTICE:

This writ of *habeas corpus ad subjiciendum* was issued to review the question of whether an indigent criminal defendant convicted upon a plea of guilty is entitled on appeal or in a *habeas corpus* proceeding to a free transcript of all relevant material of record in his case. The case of *State ex rel. Wright v. Boles*, 149 W. Va. 371, 141 S.E.2d 76 (1965) is overruled and we hold today that henceforth an indigent criminal defendant shall always be entitled, upon request, to a free transcript of the entire record of his case. Our holding today is prospective only, except with regard to this petitioner.

On September 15, 1975, the petitioner, an indigent, filed a motion by counsel in the Circuit Court of Marshall County for a free transcript of the proceedings in his case which included a request for a " . . . trial transcript and all proceedings therein, indictments, motions, statements, and commitment records." By order the circuit court denied this motion on the grounds that the petitioner had not alleged a purpose or need in his request. On October 14, 1975, the petitioner applied for and was granted a writ of *habeas corpus* in this Court on the grounds that the denial of a free transcript to him is unconstitutional.

In the case of *Wright v. Boles, supra,* this Court held that an indigent defendant is entitled to a transcript when he is convicted after a plea of not guilty, but not so entitled where the conviction is based upon a plea of guilty and the defendant was represented by counsel, unless there is evidence of deprivations of constitutional rights. The petitioner in the case at bar alleges that he believes there were constitutional infirmities in his plea of guilty, and that he needs a transcript to review the record in order to find those infirmities and to prepare his case on *habeas corpus.*

I

An indigent defendant is entitled to the same rights as a defendant with the means to purchase a steno-

graphic transcript. It is a denial of equal protection of the laws to provide a defendant of sufficient means the opportunity to purchase a transcript of his case for the purpose of discovering constitutional infirmities, which may exist, while at the same time effectively denying that opportunity to an indigent defendant. *Griffin v. Illinois*, 351 U.S. 12 (1955). The case of *Boykin v. Alabama*, 395 U.S. 238 (1969) holds that a criminal defendant is entitled to certain constitutional safeguards in entering a plea of guilty, including an affirmative showing that the plea was intelligent and voluntary. These safeguards are meaningless, however, without a remedy when such rights have been unconstitutionally denied. A remedy is most easily provided when a reviewing court can determine from the record whether the defendant was informed of those rights and voluntarily waived them.

## II

We have long been concerned with the increasing number of collateral attacks upon valid guilty pleas through *habeas corpus* proceedings. While a defendant is entitled to due process of law, he is not entitled to appeal upon appeal, attack upon attack, and *habeas corpus* upon *habeas corpus*. There must be some end to litigation, and the proper way to effect this salutary result is to do everything right the first time.[1]

There are a number of questions which a circuit court should routinely ask a defendant who enters a plea of guilty to determine the voluntariness of his plea. In general, however, circuit courts do not engage in sufficient dialogue with the defendant to enable either an appellate court, or a federal or state trial court proceeding in *habeas corpus*, to determine whether the defendant knowingly and intelligently pleaded guilty with a

---

[1]*See:* R. Neely, "To The Museum With Due Process," *Juris Doctor* (October 1975); M. Fleming, *The Price of Perfect Justice* (Basic Books, Inc., New York: 1974).

full understanding of the rights he waived as a result of his plea. Any summary proceeding, particularly one accomplished on the written guilty plea form authorized by *W. Va. Code*, 62-3-1(a), (1965), invites later collateral attack, and unfortunately the attack may still be raised after the *quid pro quo* of permitting a plea to a lesser offense, offering a lighter sentence, or forebearing to prosecute under the habitual offender statute, has already been granted by the State and cannot be withdrawn.[2] There is no deterrent to frivolous allegations of violations of constitutional rights after the defendant has received the full benefit of a plea bargain. At that point a defendant's negotiating position is similar to the one described by President Kennedy as portraying the attitude of the Russians: "What's mine is mine and what's yours is negotiable!" Accordingly it is far better policy for the trial judge to engage in substantial dialogue on the record with the defendant to bring out any circumstances which might lead to constitutional infirmities at the time of taking the plea.

Where there is a transcript of the colloquy which occurred between the court and the accused before the acceptance of the plea of guilty, and where that transcript conclusively demonstrates that there was a knowing and intelligent waiver of those rights necessarily surrendered as a result of a guilty plea, the issue is *res judicata* in a subsequent action in *habeas corpus* and the petition for habeas corpus may be summarily dismissed without an evidentiary hearing.

A defendant may knowingly and intelligently waive constitutional rights, *Johnson v. Zerbst*, 304 U.S. 458 (1938); *Singer v. United States*, 380 U.S. 24 (1965); *State v. Blosser*, _____ W. Va. _____, 207 S.E.2d 186 (1974); and *State ex rel. John R. Grob v. Blair*, _____ W. Va._____, 214

---

[2]For authority permitting plea bargaining in West Virginia *see, State ex rel. Clancy v. Coiner*, 154 W. Va. 857, 179 S.E.2d 726 (1971); *Santobello v. New York*, 404 U.S. 257, 260 (1971).

S.E.2d 330 (1975). Once having done so he cannot be heard to complain thereafter. *Brady* trilogy: *Brady v. United States*, 397 U.S. 742 (1970); *McMann v. Richardson*, 397 U.S. 759 (1970); *Parker v. North Carolina*, 397 U.S. 790 (1970); and *see Tollett v. Henderson*, 411 U.S. 258 (1973).[3] The most common issues in *habeas corpus* cases are whether there were, indeed, knowing and intelligent waivers, whether there were facts outside the record which improperly caused the defendant to enter his plea, and whether defendant's counsel was indeed competent. These major issues can all be finally resolved in the careful taking of the original plea.

A trial court should determine whether the defendant is the same person as the individual charged in the indictment, that the defendant has received a copy of the indictment returned against him, and that the defendant understands the nature and meaning of the criminal charges made against him in that indictment. In this regard it is not sufficient for the trial court to explain to the individual his rights in legal terminology alone, but rather the court should translate formal charges which include words of art such as "caption,"

---

[3]"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

"A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge, no matter how peripheral such a plea might be to the normal focus of counsel's inquiry. And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, *McMann, supra*, it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings." *Tollett, supra*, at 267.

"asportation," "felonious," "malice," etc., into language which a layman defendant can understand. In addition, it is preferable that questions calling for "yes" or "no" answers be avoided. The court should interrogate the accused with regard to the circumstances under which he received a copy of the indictment and the opportunity which he has had to read and understand it. When the court asks the defendant whether he understands the nature of the charges against him and the corresponding maximum penalty the court can impose, the defendant should be required to recite back to the court exactly what the crime is to which he is pleading guilty and what the penalty can be.

The court should inform the defendant on the record that he is entitled to counsel and that the word "counsel" means a lawyer or attorney—a person schooled in law and legally entitled to appear in court in his defense. The accused should be informed that he may select and employ counsel of his own choice or, if the defendant is indigent, that counsel qualified in the handling of criminal matters will be appointed by the court to prepare his case. The court should ask the accused whether he has an attorney, and, if so, the attorney should be interrogated with regard to the extent he has advised his client. The accused should then be required to recite for the record what conferences he has had with his attorney and whether his attorney has previously advised him concerning the constitutional rights which he is waiving by entering his guilty plea. It is important at this stage that the court determine whether the accused is satisfied with appointed counsel if he has such counsel. If the defendant waives counsel, he should be informed that a waiver of counsel may be accepted only if intelligently and understandingly made and the court should determine this question not only to its own satisfaction, but also on the record for the satisfaction of a reviewing court.

The defendant must understand that if he elects to plead guilty to the offense charged; he gives up his right

to a jury trial by twelve qualified persons. If there is an agreement concerning probation, that should be set forth, and if there is no such agreement, the court should inform the defendant that the court is not aware of any agreement in that regard and that the court will make his own decision concerning sentence.

When there is a plea bargain, the terms of the bargain should be set forth on the record, and the accused should be interrogated with regard to whether any pressure was exerted upon him to enter into a plea bargain. His attorney, if he has one, should be required to set forth for the record the reasons that he advised his client to plead guilty to the extent that such inquiry does not violate the attorney-client privilege. Finally, before the court accepts the plea, the court should advise the accused that he need not plead guilty and that in addition to the rights outlined above he is entitled: 1) to require the State to prove his guilt beyond a reasonable doubt; 2) to stand mute during the proceedings; 3) to confront his accusers and cross-examine witnesses against him; 4) to call witnesses in his own defense and to testify himself in his own defense; 5) to appeal his conviction if there are any errors of law; 6) to move to suppress any illegally obtained evidence or illegally obtained confessions; and 7) to challenge in the trial court and on appeal any errors in pre-trial proceedings. Finally, the defendant must fully understand that by entering a plea of guilty he waives all pre-trial defects with regard to his arrest, the gathering of evidence, prior confessions, etc., and further, that if he enters a plea of guilty he waives all non-jurisdictional defects in the criminal proceeding. *United States ex rel. Glenn v. McMann,* 349 F.2d 1018 (2d Cir. 1965), *cert. denied,* 383 U.S. 915 (1966); *Wallecce v. Heinze,* 351 F.2d 39 (9th Cir. 1965), *cert. denied,* 384 U.S. 954 (1966).

As an additional matter, it is suggested that the court inquire into the defendant's education and family circumstances, whether the defendant has a history of mental illness or is on drugs, and inquire whether the

defendant has discussed the advisability of his plea with his family and friends in order to spread upon the record anything that would be of value to an appellate court or trial court in a *habeas corpus* proceeding to determine whether the defendant's plea was voluntary.

## III

While a court's failure to interrogate the accused with regard to the matters set forth above, and to engage in the type of dialogue which this Court suggests, will not invalidate a conviction, a sedulous following of the procedure suggested above will substantially reduce the volume of litigation in the trial courts on *habeas corpus*.

The rule we announce today with regard to the preparation of transcripts for indigents shall have prospective application only except with regard to this petitioner.[4] Prior failures of trial courts to prepare a proper record are not alone grounds for relief in *habeas corpus* where an evidentiary hearing to determine voluntariness and waiver is available. *Boykin, supra*, holds only that failure to make such a record is appealable error, and if no appeal was prosecuted within eight months, the error is waived. In previous cases where there are no transcripts available, the facts and circumstances surrounding the plea must be developed in an evidentiary hearing.

---

[4]Our holding in this case is not retroactive. The United States Supreme Court has held that "there is no inflexible constitutional rule requiring in all circumstances either absolute retroactivity or complete prospectivity for decisions construing the broad language of the Bill of Rights." *Williams v. United States*, 401 U.S. 646, 651 (1971). According to the Supreme Court, retroactive application of new constitutional doctrine is indicated where the purpose of the doctrine is "to overcome an aspect of the criminal trial that substantially impairs its truth finding function and so raises serious questions about the accuracy of guilty verdicts in past trials." *Id.* at 653. Thus the Court has given retroactive effect to decisions providing a right to counsel, *Arsenault v. Massachusetts*, 393 U.S. 5 (1968), but has declined to give complete retroactive effect to the exclusionary rule of *Mapp v. Ohio*, 367 U.S. 643 (1961); *Linkletter v.*

Accordingly, it is ordered that the Circuit Court of Marshall County discharge petitioner from custody unless it shall cause a transcript of the proceedings to be prepared and submitted to him within sixty days.

*Writ as moulded, awarded.*

---

*Walker,* 381 U.S. 618 (1965) or to the search incident to a lawful arrest standard set out in *Chimel v. California,* 395 U.S. 752 (1969). In cases involving transcripts where the defendant has pleaded guilty, there is no issue regarding the fact finding process nor is there involved a serious question as to the guilty verdict, and therefore there is no need for retroactive application.