# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Terrick Hogan,**
**Petitioner Below, Petitioner**

**vs)   No. 18-0493** (Kanawha County 18-P-146)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**September 3, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Terrick Hogan, pro se, appeals the May 9, 2018, order of the Circuit Court of Kanawha County denying his petition for a writ of habeas corpus. Respondent Donnie Ames, Superintendent, Mt. Olive Correctional Complex,[1] by counsel Julianne Wisman, filed a response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner conspired with Shayla Stephenson and Marcus Curtis to rob a fourth person, Kalvon Casdorph ("the victim"). According to the State, petitioner planned the robbery, Ms. Stephenson provided the gun, and Mr. Curtis carried the plan out. During the robbery, Mr. Curtis shot and killed the victim. The three participants were each indicted on one count of conspiracy, one count of first-degree robbery, and one count of first-degree murder.

---

[1]Since the filing of the appeal in this case, the superintendent at Mount Olive Correctional Complex has changed and the superintendent is now Donnie Ames. The Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure. Additionally, effective July 1, 2018, the positions formerly designated as "wardens" are now designated "superintendents." *See* W.Va. Code § 15A-5-3.

1

On August 15, 2016, the circuit court held a hearing on petitioner's motion to suppress two incriminating statements he gave to the police. The court denied the motion. That same day, petitioner entered a plea agreement with the State. The State agreed to dismiss the conspiracy and robbery counts of the indictment in exchange for petitioner's guilty plea to first-degree murder. The parties agreed the appropriate disposition of petitioner's case was a life term of incarceration with the possibility of parole; therefore, pursuant to Rule 11(e)(1)(C) of the West Virginia Rules of Criminal Procedure, the circuit court would be required to impose that sentence if it accepted the plea agreement. Petitioner agreed to provide truthful testimony against his co-conspirators, if necessary. The State agreed not to file a recidivist information against petitioner. Finally, the parties agreed that petitioner would provide the factual basis for his guilty plea.

The circuit court held a plea hearing on August 16, 2016. The court noted that petitioner previously rejected the same proposed plea agreement and explained that petitioner was going to enter a guilty plea "a couple months or so ago" but "canceled" a prior plea hearing "after [a] while." Consequently, the court asked petitioner, "[a]re you sure you now want to do this?" Petitioner answered, "[y]es." The circuit court also inquired of the State regarding the nature of the plea agreement it had with petitioner's co-conspirator, Mr. Curtis. The assistant prosecutor answered, "[i]t is the exact same plea agreement." The court then asked petitioner if he requested that the court accept the plea agreement and impose a life sentence of incarceration with the possibility of parole. Petitioner responded, "[y]es, sir." The court inquired whether petitioner believed the plea agreement was in his best interests. Petitioner answered in the affirmative.

Next, the circuit court explained to petitioner the rights he would be giving up by pleading guilty such as the right to a jury trial, the right to testify in his own defense or to choose to remain silent, and the right to present witnesses. The court noted that petitioner exercised his right to seek the suppression of certain evidence at the previous day's hearing, but that his motion was denied. The court explained to petitioner that, by pleading guilty, he would waive the right to challenge such evidentiary rulings on appeal. The court asked if petitioner understood this. Petitioner responded, "[y]es, I do." The court inquired of the State as to whether discovery was provided to the defense. The assistant prosecutor answered affirmatively and noted that "[w]e've actually been to the state police headquarters to review the evidence and to look at all of it, even all of the stuff that was collected that day." The circuit court asked petitioner's attorney to confirm that defense counsel reviewed the evidence at the state police headquarters. Petitioner's attorney responded, "[t]hat is correct, Your Honor." Petitioner's counsel further confirmed that counsel was fully aware of the evidence the State would present at a trial. The court asked petitioner to confirm that he understood he had the right to move to "eliminate" any evidence that was obtained illegally. Petitioner indicated that he understood that he had that right and that he was waiving that right by pleading guilty.

Prior to accepting petitioner's guilty plea, the circuit court asked petitioner if he had any additional questions for his attorney. Petitioner and his attorney conferred off the record. Thereafter, petitioner indicated that he wanted to proceed with his guilty plea. The court then asked petitioner whether he was satisfied with his attorney's services. Petitioner responded in the affirmative. The circuit court noted that petitioner's attorney had "a lot of experience in criminal

2

cases." When petitioner was asked if he "had plenty of opportunity to talk with [counsel] and let him advise [petitioner] about [his] case," Petitioner answered, "[y]es, I have."

The circuit court again inquired whether petitioner was willing to waive his rights and enter a guilty plea to first-degree murder. Petitioner responded, "[y]es, sir." The court then asked petitioner to indicate his plea to the charge of first-degree murder. Before answering, petitioner conferred again with his attorney. Thereafter, petitioner responded, "[g]uilty." The circuit court asked for the factual basis for the guilty plea. After a third consultation with his attorney, petitioner answered:

[Petitioner]: On the day in question, I conspired to a commit a robbery, in which . . . . the victim—

The Court: Mr. Casdorph?

[Petitioner]: —Mr. Casdorph, was killed. And[,] I never intended for anything to this magnitude to occur. But—

The Court: You just intended the robbery to take place?

[Petitioner]: Yes, Sir.

. . . .

[Assistant Prosecutor]: Judge, it would be the State's evidence that the robbery . . . was 100% orchestrated by [petitioner]. He solicited Mr. Curtis to do the robbery via text message that day. As the architect of that plan, he is as guilty as Mr. Curtis of [the] murder.

Also, [petitioner] directed Mr. Curtis to where the firearm was and instructed [Ms.] Stephenson to give it to him. Those things would all be in evidence if we went to trial. There would be several text messages in which [petitioner] does those things.

. . . .

The Court: [Petitioner], do you agree with that?

[Petitioner]: Yes, sir.

The circuit court informed petitioner that it was prepared to accept his guilty plea and asked one more time whether petitioner wanted to change his mind. Petitioner responded, "[n]o, sir." Accordingly, the court accepted petitioner's guilty plea and found that petitioner "voluntarily, intelligently, knowingly[,] and understandingly waive[d]" his constitutional rights. Accordingly, the circuit court found petitioner guilty of first-degree murder.

The circuit court inquired as to whether petitioner's sentencing should be delayed until after Mr. Curtis's sentencing set for the afternoon of August 16, 2016. The court explained that such a delay might be prudent in the event that "something happens in the Curtis case . . . regarding that plea," as it was more difficult to withdraw a guilty plea after sentencing occurred. Therefore, the circuit court delayed petitioner's sentencing until after Mr. Curtis's sentencing. The record reflects that Mr. Curtis's sentencing occurred as planned and the circuit court then reconvened petitioner's sentencing hearing. After another discussion with his counsel, petitioner waived the preparation of a presentence investigation report. Thereafter, in accordance with the parties' plea agreement, the circuit court sentenced petitioner to a life term of incarceration with the possibility of parole.

On March 17, 2017, and April 10, 2017, petitioner filed pro se motions to vacate his guilty plea, alleging ineffective assistance of counsel. The circuit court denied those motions by order entered April 25, 2017. Petitioner attempted to appeal the circuit court's April 25, 2017, order to this Court. However, this Court refused to docket the appeal by order entered July 5, 2017, due to noncompliance with court rules.[2]

On May 1, 2018, petitioner filed a petition for a writ of habeas corpus, alleging ineffective assistance of counsel and an involuntary guilty plea. On May 9, 2018, the circuit court denied the petition, finding that:

> Whereupon, the [c]ourt, after giving due and mature consideration to said written petition and after reviewing the official court file in said action, is of the opinion that a hearing is not necessary in order for the [c]ourt to make a decision in this matter and further finds that good cause or other justification does not exist to grant said request. Therefore, the [c]ourt is of the opinion and does hereby ORDER that [p]etitioner's "WRIT OF HABEAS CORPUS" be and the same is hereby DENIED.

It is from the circuit court's May 9, 2018, order that petitioner appeals. In Syllabus Point 1 of *Anstey v. Ballard*, 237 W. Va. 411, 787 S.E.2d 864 (2016), we held:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

On appeal, petitioner argues that the circuit court was obligated to hold a hearing and appoint counsel regarding his claims of ineffective assistance of counsel and an involuntary guilty plea. We reject this argument. In Syllabus Point 3 of *Anstey*, we reiterated:

---

[2]We take judicial notice of the record in Supreme Court No. 17-0524.

4

"'A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief.' Syllabus Point 1, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973)." Syl. Pt. 2, *White v. Haines*, 215 W. Va. 698, 601 S.E.2d 18 (2004).

237 W. Va. at 412, 787 S.E.2d at 866.

Here, petitioner argues that, if this Court does not reverse the circuit court's order and remand the case for a hearing and appointment of counsel, we should remand the case for the entry of an order setting forth sufficient findings of fact and conclusions of law. In Syllabus Point 2 of *Watts v. Ballard*, 238 W. Va. 730, 798 S.E.2d 856 (2017), we held:

"West Virginia Code section 53-4A-7(c) (1994) requires a circuit court denying or granting relief in a habeas corpus proceeding to make specific findings of fact and conclusions of law relating to each contention advanced by the petitioner, and to state the grounds upon which the matter was determined." Syl. Pt. 1, *State ex rel. Watson v. Hill*, 200 W. Va. 201, 488 S.E.2d 476 (1997).[3]

(Footnote added).

Respondent concedes that the circuit court's order is "abbreviated," but argues that the record is sufficiently well-developed such that a remand for an order in compliance with West Virginia Code § 53-4A-7(c) is not necessary. We agree and find that a remand is unnecessary because the August 16, 2016, hearing transcript shows that the issues raised by petitioner are without merit *See State v. VanHoose*, 227 W. Va. 37, 50 n.39, 705 S.E.2d 544, 557 n.39 (2010) (finding that a remand was not necessary because the record was adequately developed in that case); *State ex rel. Farmer v. Trent*, 209 W. Va. 789, 794 n.3, 551 S.E.2d 711, 716 n.3 (2001) (declining to remand the case for the entry of a proper habeas order); *State ex rel. Vernatter v.*

---

[3]West Virginia Code § 53-4A-7(c) provides in pertinent part:

When the court [in a post-conviction habeas corpus proceeding] determines to deny or grant relief . . ., the court shall enter an appropriate order . . . . In any order entered in accordance with the provisions of this section, the court shall make specific findings of fact and conclusions of law relating to each contention or contentions and grounds (in fact or law) advanced, shall clearly state the grounds upon which the matter was determined, and shall state whether a federal and/or state right was presented and decided.

Rule 9(c) of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia imposes a similar requirement for findings of fact and conclusions of law.

*Warden, West Virginia Penitentiary*, 207 W. Va. 11, 19, 528 S.E.2d 207, 215 (1999) (finding that, "[w]hile in most circumstances the failure to make specific findings of fact and conclusions of law regarding an issue raised in habeas proceedings would necessitate a remand, we need not take such action in the present case[.]").

With regard to petitioner's first claim, in Syllabus Points 3 and 6 of *Vernatter*, we held:

3.      "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syllabus point 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

. . . .

6.      In cases involving a criminal conviction based upon a guilty plea, the prejudice requirement of the two-part test established by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995), demands that a habeas petitioner show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

207 W. Va. at 13-14, 528 S.E.2d at 209-10. "Failure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim." *Id.* at 17, 528 S.E.2d at 213 (citing *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 321, 465 S.E.2d 416, 423 (1995)).

Here, we find that the August 16, 2016, plea and sentencing transcript wholly refutes petitioner's allegations of ineffective assistance of counsel. First, while his motion was denied, the transcript reflects that petitioner's counsel filed a motion to suppress the two incriminating statements petitioner gave to the police. Second, petitioner argues that he was a drug user—not a murderer—and that counsel should have investigated his compromised mental state at the time of the crime. As the transcript reflects, not only did petitioner plead guilty to first-degree murder but he also provided the factual basis for his plea by stating that he conspired to rob the victim and that, during the robbery, the victim was killed. Petitioner agreed with the State's proffer that he was the "architect" of the robbery. Therefore, based on our review of the record, we concur with respondent's position that nothing within the record indicates that petitioner would have insisted on going to trial. Third, petitioner generally argues that his attorney failed to investigate his case. We find that this claim is contradicted by the proffers of the assistant prosecutor and petitioner's counsel during the plea hearing that the State provided discovery to the defense and that each party's attorney went to the state police headquarters "to review the evidence." Next, petitioner alleges that his attorney failed to meet with him an adequate number of times. Petitioner concedes that his attorney met with him approximately ten or twelve times in a six-month period. We find petitioner's concession is in accord with his answer at the plea and sentencing hearing that he "had

plenty of opportunity to talk with [counsel] and let him advise [petitioner] about [his] case[.]" Accordingly, we find that this claim of ineffective assistance is without merit.

Fifth, petitioner alleges that his attorney failed to challenge the disparity between petitioner's plea agreement and Ms. Stephenson's plea agreement. Petitioner alleges that Ms. Stephenson pled guilty to one count of conspiracy and was sentenced to one to five years of incarceration. According to the State's proffer at petitioner's hearing—with which petitioner agreed—Ms. Stephenson only provided the gun for the robbery, while Mr. Curtis was the shooter and petitioner was the "architect" of the robbery. Upon questioning from the circuit court, the assistant prosecutor stated that Mr. Curtis and petitioner received "the exact same plea agreement." Therefore, based on our review of the record, we find that any disparity between Ms. Stephenson's plea agreement and the plea agreement offered to both Mr. Curtis and petitioner was justified by their respective roles in the crime.[4] Similarly, petitioner argues that his attorney should have raised certain "defects" in the indictment based solely on petitioner's self-serving perception regarding each co-conspirator's role in the crime. Given the basis for this argument, we find that it is without merit.

Sixth, petitioner argues that his attorney failed to obtain all of the text messages between petitioner and Mr. Curtis. Respondent counters that, even if petitioner's attorney failed to obtain the totality of the text messages, nothing indicates that the outcome of petitioner's plea and sentencing hearing would have been different. We agree with respondent. Here, not only did petitioner plead guilty to first-degree murder but he also provided the factual basis for his plea. Immediately thereafter, the circuit court asked petitioner a third time whether he wanted to proceed with the hearing or whether he wanted to change his mind. Petitioner responded that he did not wish to change his mind. Therefore, we reject this claim under the second prong of the *Strickland/Miller* test.

Finally, petitioner alleges that his attorney failed to inform him of Mr. Curtis's own misgivings about entering into the plea agreement that the State proposed to each of them. We find that this issue was raised twice at petitioner's hearing. When the assistant prosecutor informed the circuit court that petitioner and Mr. Curtis were each offered the same plea agreement, she noted that, when Mr. Curtis believed that he might have to testify against petitioner, "he got cold feet[.]" Additionally, the circuit court temporarily continued petitioner's hearing so that he would not be sentenced until after Mr. Curtis's sentencing in case "something happens in the Curtis case . . .

---

[4]As respondent points out, in Syllabus Point 2 of *State v. Buck*, 173 W. Va. 243, 314 S.E.2d 406 (1984), we held:

> Disparate sentences for codefendants are not per se unconstitutional. Courts consider many factors such as each codefendant's respective involvement in the criminal transaction (including who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age[,] and maturity), and lack of remorse. If codefendants are similarly situated, some courts will reverse on disparity of sentence alone.

regarding that plea." Therefore, based on our review of the record, we find that, at the time of his plea, petitioner was aware that Mr. Curtis had not yet been sentenced and conclude that none of petitioner's allegations of ineffective assistance warrants a hearing and appointment of counsel.

With regard to petitioner's claim that his guilty plea was involuntary, "[a] habeas petitioner seeking to overturn his guilty plea bears the burden of persuasion with respect to the voluntariness of the plea." *Farmer*, 209 W. Va. at 794, 551 S.E.2d at 716 (citing Syl. Pt. 3, *State ex rel. Clancy v. Coiner*, 154 W. Va. 857, 179 S.E.2d 726 (1971)). In *Call v. McKenzie*, 159 W. Va. 191, 220 S.E.2d 665 (1975), we found:

> Where there is a transcript of the colloquy which occurred between the court and the accused before the acceptance of the plea of guilty, and where that transcript conclusively demonstrates that there was a knowing and intelligent waiver of those rights necessarily surrendered as a result of a guilty plea, the issue is *res judicata* in a subsequent action in *habeas corpus* and the petition for habeas corpus may be summarily dismissed without an evidentiary hearing.

*Id.* at 195, 220 S.W.2d at 669.

Here, petitioner first alleges that his attorney assisted the State in coercing him into accepting the plea agreement. More specifically, petitioner argues that he was intimidated into accepting the plea agreement after his attorney advised him of the possible consequences under the West Virginia habitual offender statute, West Virginia Code §§ 61-11-18 and 61-11-19. We find that petitioner fails to allege that counsel's advice was erroneous or that counsel provided the advice in a threatening way. Rather, petitioner argues that the threat was implicit in the mere fact that the advice was provided. We find that petitioner's recidivism was a legitimate issue in the case. As reflected in the plea and sentencing transcript, the State believed that petitioner had at least one prior violent felony, based on which it could have sought a sentence enhancement pursuant to West Virginia Code § 61-11-18(a). That fact is the reason that the parties agreed to a provision in the plea agreement that the State would not file a recidivist information. Therefore, we find that it was prudent—not threatening—for counsel to advise petitioner regarding the possible application of the habitual offender statute if petitioner chose not to accept the plea agreement. As to the remainder of petitioner's allegations supporting this claim, we find that they are unsupported in fact and in direct contradiction to the explicit statements made by petitioner during his plea colloquy. Based on our review of the record, we conclude that petitioner's claim that his guilty plea was involuntary is without merit.

In summary, although the circuit court's May 9, 2018, order is not in compliance with West Virginia Code § 53-4A-7(c), neither of petitioner's two habeas claims warranted a hearing and appointment of counsel. Therefore, we find that a remand for specific findings of fact and conclusions of law is unnecessary and affirm the May 9, 2018, order as the record supports the circuit court's denial of petitioner's habeas petition.

For the foregoing reasons, we affirm the circuit court's May 9, 2018, order denying petitioner's petition for a writ of habeas corpus.[5]

Affirmed.

**ISSUED**: September 3, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[5]As respondent notes, a denial of a habeas petition without a hearing and appointment of counsel does not trigger the application doctrine of res judicata, pursuant to Syllabus Point 2 of *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981), to bar subsequent petitions. Therefore, petitioner remains free to file future petitions provided that the allegations therein are factually supported. *See Id.* at 771, 277 S.E.2d at 612.

9