**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**DeAndre Moore,**
**Petitioner Below, Petitioner**

**v.) No. 22-0392** (Kanawha County 20-P-244)

**Jonathan Frame, Superintendent,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner DeAndre Moore appeals the Circuit Court of Kanawha County's May 4, 2022, order denying his petition for a writ of habeas corpus.[1] The petitioner argues that the court erred in basing its rulings on facts not in evidence. He also argues that the court erred in denying him habeas relief on his claims that his guilty plea was involuntary, that he received ineffective assistance of counsel, of pretrial error, of actual innocence, and of cumulative error. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

On July 7, 2016, David Stewart drove his girlfriend, Kaylie Gibson; and others, including the petitioner and C'Audre Boxley, to an apartment complex located in Charleston, West Virginia. Upon arrival, the petitioner fatally shot Mr. Stewart, apparently over a prior dispute involving a handgun. Ms. Gibson saw the murder, and she provided a statement to law enforcement identifying the petitioner as the murderer. In Mr. Boxley's statement to police, he said he was walking to the apartment complex and that the petitioner had stayed behind at Mr. Stewart's car when Mr. Boxley heard the gunshot. Mr. Boxley ran to the apartment complex, and he said he saw the petitioner moments later in the apartment complex with a gun. The others in Mr. Stewart's vehicle gave statements to law enforcement that corroborated Mr. Boxley's account. Additional evidence came in the form of surveillance camera footage, which captured the murder and showed that the

---

[1] The petitioner appears by counsel John J. Balenovich. The respondent appears by Attorney General Patrick Morrisey and Assistant Attorney General William E. Longwell. When the petitioner filed his petition for habeas relief, he was incarcerated at Huttonsville Correctional Center and named the superintendent of that facility as respondent. The petitioner has been since been moved to Mount Olive Correctional Complex, at which Jonathan Frame is superintendent. The appropriate substitution has been made under Rule 41 of the West Virginia Rules of Appellate Procedure.

murderer wore his hair in dreadlocks. Of the individuals seen in or near Mr. Stewart's car on the surveillance footage, only the petitioner wore dreadlocks.

The petitioner was subsequently indicted on one count each of first-degree murder, wanton endangerment, and the use or presentation of a firearm during the commission of a felony. To resolve the charges contained in this indictment as well as multiple charges contained in two other indictments, the State proposed a binding plea agreement that would require the petitioner to plead guilty to first-degree murder, with mercy attaching to the required life sentence, in exchange for the dismissal of all remaining charges.[2]

In the petitioner's trial counsel's six-page letter conveying the State's offer to the petitioner, trial counsel set forth the sentences the petitioner faced should he be convicted of each charge and informed the petitioner of the various rights he would be waiving by pleading guilty.[3] The petitioner's trial counsel noted the strength of the State's case and advised that he expected the petitioner to be convicted, "as we have no viable defense to any of the crimes." Trial counsel emphasized the binding nature of the agreement and that the petitioner stood the chance of parole. The petitioner's trial counsel "urge[d]" the petitioner to accept the plea offer, concluding with his belief that acceptance would be in the petitioner's "best interest." The petitioner signed his trial counsel's letter, representing that he "wish[ed] to plead guilty and accept the [State's] plea bargain."

In November 2017, the circuit court held a plea hearing. The petitioner's trial counsel recounted that he reviewed the essential elements of first-degree murder with the petitioner; that counsel had "explained all of [the petitioner's] trial rights and his constitutional rights related to trial"; that they had "reviewed all of the discovery materials, including two separate videos, related to and of the actual incident"; and that they had discussed the consequences of the plea "[n]umerous times." Trial counsel also recounted that he had hired "an investigator that had reviewed all the materials and met with witnesses" and that trial counsel was "prepared to go to trial," but he was "persuaded and convinced" that the petitioner wanted to enter into the plea agreement instead, due especially to the strength of the State's case. "In fact, the incident itself is clearly on video. As a result of the same with multiple witnesses, both of the incident and of matters thereafter, this is a case that is—from the defense perspective—. . . extraordinarily difficult." Trial counsel further remarked that the evidence in support of the dismissed charges contained in the other indictments was "very unfavorable" and exposed the petitioner to "some [eight] to [sixty] years" of incarceration.

The circuit court asked the petitioner if he had "any trouble understanding what [trial counsel] explained to you?" The petitioner responded, "Not at all. I understood." The court explained to the petitioner the agreed upon sentence, including that parole eligibility "doesn't mean you're going to get parole." The petitioner said, "Yes, I understand all that." The court continued, "So you desire to plead guilty to murder in the first degree; right?" The petitioner responded, "With

---

[2] *See* W. Va. R. Crim. P. 11(e)(1)(c) (providing for a plea agreement wherein the State agrees "that a specific sentence is the appropriate disposition of the case").

[3] The petitioner's trial counsel was different from his current counsel.

2

the chance of parole, yes." The petitioner confirmed that he did not want a jury trial and that he wanted a sentence containing the possibility of parole after fifteen years of incarceration. Accordingly, the petitioner pled guilty, and he signed a written plea acknowledging his guilt. The court asked, "When you signed it, did you understand you were acknowledging in writing that you were guilty?" The petitioner answered, "A hundred percent. . . . I understood."

The State provided a factual basis for the plea, reciting that the petitioner "pulled out a firearm and shot [Mr. Stewart] as he sat in the vehicle in the driver seat" and that the killing was "clearly captured on video." The petitioner's trial counsel declined the opportunity to add anything to that narrative, believing it to be unnecessary. Therefore, "[u]pon the facts submitted by [the State] and [the petitioner's] plea of guilty," which the circuit court found was entered "freely, voluntarily, intelligently, knowingly, and understandingly," the court adjudged the petitioner guilty of first-degree murder. In line with the parties' agreement, the court sentenced the petitioner to life incarceration, with the possibility of parole after serving fifteen years.

Nearly six years later, in September 2020, the petitioner filed a petition for a writ of habeas corpus in the circuit court, initiating the underlying proceedings. The court appointed counsel, who filed an amended petition asserting five grounds for relief. First, the petitioner claimed that trial counsel rendered ineffective assistance for failing to fully investigate potential defenses, to investigate the facts, and to provide him with "complete discovery." The petitioner further claimed that the latter two alleged failures resulted in counsel's failure to ensure that the petitioner's guilty plea was voluntary. Second, the petitioner asserted a standalone claim that his guilty plea was not voluntary or intelligent, arguing that he had no knowledge of the State's evidence and that the plea colloquy was insufficient. In his third and fourth grounds, the petitioner argued that he was denied due process and equal protection by the circuit court's pre-plea denial of his motion for a mental status examination.[4] Fifth and finally, the petitioner argued cumulative error.

The parties appeared for an omnibus evidentiary hearing on March 29, 2022.[5] The petitioner's trial counsel testified that he met with the petitioner "[a]t least five" times, they reviewed discovery over two days, and trial counsel provided the petitioner with a copy of at least some of the discovery materials. Trial counsel testified that they discussed the possibility of a plea agreement "from the outset" due to "an admission in regard to this shooting that [the petitioner] made" during an initial meeting. That admission "tie[d] our hands in regard to how we proceed[ed] to defend the case." Trial counsel recalled that the State's evidence was strong, but he nevertheless retained an investigator to supplement and confirm the accuracy and reliability of the discovery received from the State.

Regarding the plea offer, trial counsel testified that he discussed with the petitioner the State's evidence, the "likely outcome" at trial, and the penalties for convictions. Trial counsel

---

[4] In the petitioner's *Losh* list that accompanied his amended petition, he asserted mental incompetency at the time of the crime, at the time of trial, and at the time of the offense as grounds for relief. *See Losh v. McKenzie*, 166 W. Va. 762, 768-70, 277 S.E.2d 606, 611 (1981) (listing the most frequently raised grounds for habeas relief).

[5] At the omnibus hearing, the petitioner withdrew his three mental incompetency claims.

3

stated his belief that "in a case like this, which essentially when you see the video comes across as a quasi-execution, the likelihood of mercy is very small." So, trial counsel testified, "[g]iven the circumstances that we had and the evidence that we received and the fact that all the other charges would be dismissed, [the plea agreement] was without question the best, and I believe the only viable option that he had." Although the plea colloquy at the petitioner's plea hearing was "succinct," according to trial counsel, trial counsel believed the petitioner's plea to be knowing, intelligent, and voluntary. Trial counsel detailed that the petitioner received a "statement in support of guilty plea" in the State's plea packet reciting each right waived by the petitioner and trial counsel's letter setting forth those same rights.

Trial counsel recalled filing a motion for a mental status examination before the petitioner entered his plea, which was denied by the circuit court.[6] Trial counsel confirmed, however, that he would not have gone forward with the plea agreement if he had doubted that the petitioner understood what he was doing.

The petitioner questioned trial counsel about a criminal complaint filed against Kerry Jemison detailing that Mr. Stewart (the victim) alleged that Mr. Jemison brandished a weapon and threatened to kill Mr. Stewart the day before his murder. Trial counsel was "certain that [Mr. Jemison] was on the list of persons for [his investigator] to talk to," but he could not recall whether Mr. Jemison was, in fact, interviewed.

The petitioner called Mr. Boxley, one of the witnesses who provided a statement to the police implicating the petitioner in Mr. Stewart's murder. At the omnibus hearing, however, Mr. Boxley claimed that the petitioner was inside the apartment complex when they heard a gunshot on the night of Mr. Stewart's murder. Mr. Boxley denied seeing the petitioner with a gun, and Mr. Boxley claimed not to remember giving a statement immediately after the murder in which he said he saw the petitioner "pull a gun." Mr. Boxley confirmed that he never told the prosecutor, police, or the petitioner's trial counsel in 2016 that the petitioner could not have committed the murder because the petitioner was with him inside the apartment complex.

The petitioner testified that he had little contact with his trial counsel, denied receiving discovery from trial counsel, and claimed that he informed trial counsel that he did not want to enter into a plea agreement because he was innocent. The petitioner denied admitting to trial counsel that he killed Mr. Stewart. The petitioner said he felt "[l]ike [he] had no choice" but to enter into the plea agreement, claiming to have "no knowledge of the facts." The petitioner denied knowingly or voluntarily entering his plea, and he testified that he would not have entered a guilty plea had he known of Mr. Boxley's version of events, had he known of Mr. Jemison's threat, or if he had been provided complete discovery.

The circuit court denied the petitioner's habeas petition by order entered May 4, 2022. The court noted the discrepancies in testimony and "specifically [found] trial counsel to be credible in those instances" where trial counsel's testimony differed from the petitioner's or Mr. Boxley's. The court also found that Mr. Boxley's testimony was not credible on the whole: "It is contradicted

---

[6] Trial counsel explained that "there was a possibility of diminished capacity in that regard and that voluntary intoxication was what I recall in my mind perhaps."

not only by the statement he gave to the police at the time of the shooting, but also by the testimony of the victim's girlfriend, the others who were passengers in the [victim's vehicle,] and the surveillance videos."

The circuit court found that the petitioner was not denied effective assistance of counsel, as any need for a mental examination was waived by the petitioner's "fully counseled, voluntary, knowing, and intelligent guilty plea, in the absence of any evidence he was incompetent to plead." The court also found that the result of the proceedings would not have been different had the petitioner's trial counsel pursued a mental status examination where the petitioner had not provided evidence of, or even claimed to have, a mental disease or defect. The court found that the petitioner's claim that trial counsel inadequately investigated was baseless. Trial counsel retained an investigator and was prepared to go to trial, and any additional investigation of Mr. Jemison would not have been "helpful" due to the petitioner's admission to the murder. The court also dismissed the petitioner's assertion that trial counsel failed to provide the petitioner with discovery, citing trial counsel's contrary testimony.

Regarding the petitioner's plea hearing, the circuit court noted that any failure to follow "word for word" the colloquy specified by Rule 11 of the West Virginia Rules of Criminal Procedure (governing pleas) did not render the petitioner's plea involuntary. In concluding that the plea was intelligent and voluntary, the court cited to the petitioner's written guilty plea certifying his understanding of the rights he waived and trial counsel's letter identifying those rights. The court also took note of the petitioner's statements at his plea hearing affirming his desire to plead guilty, reserve a chance of parole, and avoid a jury trial. The court also noted that the petitioner does not claim to lack an understanding of any particular waived right.

The circuit court also denied the petitioner's claims that he was denied due process and equal protection by the denial of his motion for a mental status examination. The court again noted that the petitioner did not claim that he suffered any mental disease or defect, and, "[t]here being no evidence to the contrary, the [c]ourt's order [denying the motion] is presumed to be correct." Lastly, the court found that because there was no error in the proceedings, "there can be no cumulative error."

The petitioner now appeals from the circuit court's May 4, 2022, order denying him habeas relief. We review that order "and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, in part, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

In the petitioner's first assignment of error, he claims that the circuit court erred in entering an order that "contained facts about this case that [were] recorded in the State's discovery but not brought up in testimony at the omnibus evidentiary hearing." The petitioner argues that the court was "limited to the record established at the evidentiary hearing."

This assignment of error is plainly without merit because, under West Virginia Code § 53-4A-7(a), courts are directed to deny habeas relief if, among other scenarios, "the record in the proceedings which resulted in the conviction and sentence . . . show to the satisfaction of the court

5

that the petitioner is entitled to no relief." *See also id.* § 53-4A-3(a) (requiring a court to refuse a writ of habeas corpus where, among other scenarios, the record resulting in the conviction and sentence show that a petitioner is not entitled to relief). Accordingly, the circuit court permissibly relied on the record from the petitioner's underlying trial court proceedings in disposing of his habeas claims.

In the petitioner's second assignment of error, he argues that the circuit court erred in determining that his guilty plea was knowingly, intelligently, and voluntarily entered. In support, he claims that trial counsel failed to provide him with discovery, so he did not understand the nature of the charges or the State's case, and that trial counsel failed to meaningfully investigate, so Mr. Boxley (an "alibi witness") and Mr. Jemison (a potential "alternate perpetrator") went uncovered. The petitioner also claims that the circuit court's plea colloquy was deficient, as the court failed to ask about his understanding of his rights, his education, whether he consulted with friends or relatives, his drug use, or about the facts that made him guilty of first-degree murder. *See* Syl. Pt. 5, *Call v. McKenzie*, 159 W. Va. 191, 220 S.E.2d 665 (1975) (outlining matters the trial court should elicit from a defendant in accepting a plea).

"The burden of proving that a plea was involuntarily made rests with the pleader," and the petitioner has failed to meet this burden. *See* Syl. Pt. 3, *State ex rel. Clancy v. Coiner*, 154 W. Va. 857, 179 S.E.2d 726 (1971). The petitioner's claims that trial counsel failed to provide him with discovery or meaningfully investigate are belied by the record, which shows that trial counsel informed the circuit court at the petitioner's plea hearing—without opposition from the petitioner—that he and the petitioner had reviewed discovery, that trial counsel had retained an investigator, and that trial counsel was prepared for trial. Trial counsel reiterated these assertions at the petitioner's omnibus evidentiary hearing here, and the circuit court found that testimony credible and the petitioner's contradictory testimony incredible. "In cases where there is a conflict of evidence between defense counsel and the defendant, the circuit court's findings will usually be upheld." *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 327, 465 S.E.2d 416, 429 (1995). Lastly, regarding the plea colloquy, "a court's failure to interrogate the accused with regard to the matters [identified by the petitioner], and to engage in the type of dialogue which this Court suggests, will not invalidate a conviction." *Call*, 159 W. Va. at 199, 220 S.E.2d at 671; *see also State ex rel. Farmer v. Trent*, 209 W. Va. 789, 794, 551 S.E.2d 711, 716 (2001) ("[A] prisoner may not collaterally attack a guilty plea under Rule 11 where 'all that is shown is a failure to comply with the formal requirements of the Rule.'" (quoting *State ex rel. Vernatter v. Warden, W. Va. Penitentiary*, 207 W. Va. 11, 20, 529 S.E.2d 207, 216 (1999))). Accordingly, the petitioner has failed to demonstrate that his guilty plea was involuntarily entered, and the court did not err in denying relief on this ground.

Next, the petitioner argues in his third assignment of error that the circuit court erred in denying his ineffective assistance of counsel claim. The petitioner claims that trial counsel's investigation was inadequate because Mr. Jemison and Mr. Boxley were not discovered, nor were "any defenses based upon the [p]etitioner's mental state at the time of the offense." The petitioner also argues that trial counsel was ineffective for failing to provide him with discovery, which resulted in trial counsel's failure to ensure that the petitioner's plea was voluntary and intelligent. As a final basis for his ineffective assistance claim, the petitioner argues that trial counsel failed to file a direct appeal.

To establish ineffective assistance of counsel where a conviction is based upon a guilty plea, a habeas petitioner must establish two things. First, it must be shown that "[c]ounsel's performance was deficient under an objective standard of reasonableness." *Daniel*, 195 W. Va. at 316, 465 S.E.2d at 418, Syl. Pt. 1, in part (quoting Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995)). Second, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Vernatter*, 207 W. Va. at 14, 528 S.E.2d at 210, Syl. Pt. 6, in part. Finally, a claim may be disposed of "based solely on a petitioner's failure to meet either prong of the test." *Daniel*, 195 W. Va. at 317, 465 S.E.2d at 419, Syl. Pt. 5, in part. Here, too, the petitioner has failed to demonstrate error. The circuit court deemed Mr. Boxley's changed account of the murder incredible and found that the petitioner admitted to his trial counsel that he killed Mr. Stewart, thereby obviating the need to investigate Mr. Jemison (if it was true, in fact, that trial counsel failed to investigate Mr. Jemison). Also, the petitioner has yet to identify any mental disease or defect (or even symptoms) from which he suffers, let alone substantiate a mental disease or defect, and, as set forth above, his claim that he was not provided discovery lacks credibility. Regarding trial counsel's failure to file a direct appeal, we note that an appeal following the entry of a guilty plea lies only "where an issue is raised as to the voluntariness of the guilty plea or the legality of the sentence." Syl. Pt. 1, in part, *State v. Sims*, 162 W. Va. 212, 248 S.E.2d 834 (1978). The petitioner does not contend that his sentence is illegal, and, as determined above, his plea was voluntarily entered, so he has identified no viable ground that counsel could have pursued on direct appeal. Therefore, the court did not err in denying the petitioner's ineffective assistance of counsel claim where the petitioner failed to demonstrate both that counsel rendered deficient representation and that, but for any claimed error, he would have insisted on going to trial.

In the petitioner's fourth assignment of error, he claims that the circuit court denied him due process in denying his motion for a mental status examination during the trial court proceedings. Relatedly, he claims in his fifth assignment of error that the court's denial of that motion violated equal protection principles. However, "[o]ur law is well established that non-jurisdictional errors are waived by the entry of a voluntary guilty plea." *Pethel v. McBride*, 219 W. Va. 578, 595, 638 S.E.2d 727, 744 (2006); *see also State v. Greene*, 196 W. Va. 500, 505, 743 S.E.2d 921, 926 (1996) (Cleckley, J., concurring) ("If any principle is well settled in this State, it is that, in the absence of special circumstances, a guilty plea waives all antecedent constitutional and statutory violations save those with jurisdictional consequences." (citation omitted)). Having found that the petitioner's guilty plea was voluntarily entered, the court did not err in denying habeas relief on these claimed grounds.

Sixth, the petitioner argues that Mr. Boxley and Mr. Jemison prove the petitioner's "actual innocence." We have observed that "[t]he actual innocence doctrine was developed for the purpose of permitting federal courts to review claims by a defendant that were procedurally barred," and it requires a showing that, "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *State ex rel. Smith v. McBride*, 224 W. Va. 196, 208 n.44, 681 S.E.2d 81, 93 n.44 (2009) (quoting *Barreto-Barreto v. United States*, 551 F.3d 95, 102 (1st Cir. 2008)). As the petitioner was not procedurally barred from bringing a newly discovered evidence claim, the "actual innocence" doctrine is inapplicable. *See Smith*, 224 W. Va. at 208 n.44, 681 S.E.2d at 93 n.44 (finding the doctrine inapplicable where

7

the petitioner was not barred from asserting newly discovered evidence). Nevertheless, for the reasons identified above, the evidence related to Mr. Boxley and Mr. Jemison does not prove the petitioner's innocence, so even if the claim were applicable, there is no merit to it.

Seventh and finally, the petitioner argues that the court erred in denying his cumulative error claim. He asserts that the errors identified above, when considered "in their totality," warranted granting a writ of habeas corpus.[7] Having found no error, the petitioner's claim of cumulative error necessarily fails. "Cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors." *State v. Knuckles*, 196 W. Va. 416, 426, 473 S.E.2d 131, 141 (1996).

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 26, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

---

[7] The petitioner identifies an additional assignment of error in which he claims that his "sentence of life without mercy for the crime of kidnapping was unconstitutional where the petitioner was sentenced to life with mercy for the crime of murder." In violation of this Court's rules, the petitioner offers no "argument clearly exhibiting the points of fact and law presented, the standard of review applicable, [or] the authorities relied on" to support this claim, nor does he include "appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issue[ was] . . . presented to the lower tribunal." W. Va. R. App. P. 10(c)(7). Accordingly, we will not consider the claim, but we nevertheless note that the petitioner was not convicted of or sentenced for kidnapping. *See id.* ("[T]he Supreme Court may disregard errors that are not adequately supported by specific references to the record on appeal."); *see also State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("[I]ssues . . . mentioned only in passing but . . . not supported with pertinent authority, are not considered on appeal." (citation omitted)).